

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-19-00276-CR, 04-19-00277-CR, 04-19-00278-CR & 04-19-00279-CR

**EX PARTE** Christopher **DAVILA**

From the 227th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2019CR3859, 2019CR3712, 2019CR3713 & 2019CR3860
Honorable Andrew Wyatt Carruthers, Judge Presiding

Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: September 11, 2019

AFFIRMED

In four indictments, Christopher Davila ("Davila") is charged with injury to a child causing serious bodily injury or death, concealment of a corpse, possession of a firearm by a felon, and possession with intent to deliver a controlled substance in an amount more than one gram but less than four grams. This is an accelerated appeal from the trial court's orders denying Davila's applications for writs of habeas corpus seeking a reduction in bond on all four charges. We affirm the trial court's orders.

## Background

In January 2019, Davila called 911 to report his car had been stolen from a convenience store parking lot while his girlfriend's eight-month-old son K.J.D. was in the back seat. Davila was arrested for endangering a child and released on $30,000 bond.

After Davila was released on bond, San Antonio police officers began surveilling him on suspicion that Davila had tampered with evidence to conceal K.J.D.'s death. While surveilling Davila, officers observed him engaging in behavior consistent with narcotics trafficking. Police officers made contact with a vehicle in which Davila was a passenger, detected the odor of marijuana emanating from the vehicle, and discovered methadone and a firearm in a search of the vehicle. Davila was arrested for possession with intent to deliver a controlled substance and for possession of a firearm by a felon. In a police interview after his arrest, Davila stated he buried K.J.D. in a shallow hole under an overpass after K.J.D. fell off a bed, struck his head on a tile floor, and died. Davila stated he and his relatives staged the car theft the next day. The medical examiner has since ruled K.J.D.'s death a homicide by blunt force trauma.

Davila was indicted for injury to a child, concealment of a corpse, possession of a firearm by a felon, and possession with intent to deliver a controlled substance. The trial court set Davila's bond at $500,000 for the charge of injury to a child and $250,000 for each of the additional three charges. Davila filed four applications for pretrial writs of habeas corpus seeking a reduction in bond. After conducting a hearing on all the applications, the trial court denied them. Davila brings this accelerated appeal.

## Discussion

In a single issue, Davila argues the trial court erred in declining to reduce the total amount of his bonds.

### A. Standard of review

We review the trial court's pretrial bail determination for abuse of discretion. *Ex parte Gonzalez*, 383 S.W.3d 160, 161 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981)). A trial court abuses its discretion by acting arbitrarily or unreasonably, without reference to any guiding rules or principles. *Id.* We will

reverse the trial court's order only if it is outside the zone of reasonable disagreement. *Ex parte Nimnicht*, 467 S.W.3d 64, 66 (Tex. App.—San Antonio 2015, no pet.).

The following rules are to be considered in setting an appropriate bail amount:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15. Other relevant factors include the potential sentence, aggravating factors involved in the alleged offense, the defendant's ties to the community, including his family ties, length of residency, and employment history, as well as the defendant's prior criminal history and compliance with the conditions of other bonds. *Gonzalez*, 383 S.W.3d at 162 (citing *Rubac*, 611 S.W.2d at 849–50). Davila bears the burden to demonstrate his bail is excessive in light of these considerations. *Id.* at 161.

**B.      Application**

Davila presented one witness at the hearing—his girlfriend and K.J.D.'s mother, Jasmine. Jasmine testified she has known Davila for six or seven years and has been dating him for one year. Both Davila and Jasmine have children from prior relationships, and Jasmine is currently pregnant with Davila's child. Jasmine's four children from prior relationships were recently removed by Child Protective Services and are living with her parents. Neither Davila nor Jasmine can afford Davila's bond. Jasmine testified Davila was employed as a forklift driver but had not

worked for several days prior to his most recent arrest due to an injury. Jasmine is aware Davila is a member of the Tango Orejon gang and has multiple prior arrests and convictions. Under cross-examination, however, Jasmine admitted she is unaware of the full extent of Davila's prior criminal history and of his prior failures to appear. Jasmine is not concerned about Davila being around her children, despite his gang membership, because "mostly my whole family are practically like known for gangs[.]" Regardless, Jasmine testified she "know[s] for sure [Davila] will appear to court 'cause he's not the same person that he was before." Jasmine also believes there would be no further risk to the community if Davila is released pending trial.

During the hearing, the trial court admitted a gang information sheet signed by Davila in 2013 acknowledging his membership in the Tango Orejon gang. The trial court also admitted records of Davila's prior criminal history, including multiple arrests dating back to 1996, as well as convictions for possession of a controlled substance, assault of a family member, and unauthorized use of a motor vehicle. Davila has been arrested multiple times while released on bond for other offenses, including his most recent arrest for possession of a controlled substance and possession of a firearm by a felon. Davila also has failed to appear for court on multiple occasions.

While the evidence in the record reflects Davila cannot afford his bond and has family ties to the community, other relevant factors weigh against a determination that the bond amount is excessive. First, we must give primary consideration to the nature of the alleged offenses and the length of the potential sentences. *Nimnicht*, 467 S.W.3d at 67 (citing *Rubac*, 611 S.W.2d at 849). When the charged offense involves aggravating factors that may result in a lengthy prison sentence, such as violence, bail must be sufficiently high to secure the defendant's presence at trial. *See id.*

Here, Davila is charged with four offenses. The most serious charge is intentionally or knowingly causing serious bodily injury to a child, a felony of the first degree punishable by imprisonment for life or for any term between five and ninety-nine years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. §§ 12.32, 22.04(a)(1), (e). The evidence admitted at the hearing demonstrates K.J.D. died while in Davila's care, and the medical examiner ruled K.J.D.'s death a homicide by blunt force trauma. While Davila claims K.J.D.'s death was accidental, the seriousness of the charge and the length of the potential sentence give Davila a strong incentive not to appear for trial.

The additional charges against Davila, while less serious, also expose Davila to potentially lengthy sentences, in part because of repeat offender enhancements. Altering, destroying, or concealing a human corpse is a felony of the second degree punishable by imprisonment for any term between two and twenty years and a fine not to exceed $10,000. *Id.* §§ 12.33, 37.09(a), (c). Possession of a firearm by a felon with a repeat offender enhancement is a felony of the second degree punishable by imprisonment for any term between two and twenty years and a fine not to exceed $10,000. *Id.* §§ 12.33, 12.42(a), 46.04(a)(2). Finally, possession with intent to deliver a controlled substance (Penalty Group 1) in an amount more than one gram but less than four grams with a repeat offender enhancement is a felony of the first degree punishable by imprisonment for life or for any term between five and ninety-nine years and a fine not to exceed $10,000. *Id.* §§ 12.32, 12.42(b); TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(4), 481.112(c). Because the lengths of the potential sentences for the four alleged offenses give Davila a strong incentive not to appear for trial, this factor weighs against a determination that Davila's bonds are excessive.

Second, we must evaluate Davila's extensive prior criminal record to determine whether he presents a danger to the community. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15; *Nimnicht*, 467 S.W.3d at 69. The undisputed evidence before the trial court demonstrates Davila is a gang

member with a lengthy criminal history, including a prior conviction for assault against a family member, as well as a history of committing crimes while released on bond. While Jasmine is confident Davila has changed for the better, there are other children in Davila's life who may be at risk of violence if he is released on bond. Accordingly, we conclude this factor weighs against a determination that Davila's bonds are excessive.

Finally, we recognize the purpose of pretrial bail is to secure the defendant's appearance for trial. *Gonzalez*, 383 S.W.3d at 161 (citing *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim App. [Panel Op.] 1980)). We may consider Davila's criminal history to evaluate whether he poses a flight risk. *See Nimnicht*, 467 S.W.3d at 69. As discussed, the trial court reasonably could have believed Davila may not appear for trial in the face of potentially lengthy sentences and given his prior history of failing to appear. Further, Davila did not present any strong evidence of community ties that might assure the trial court he is not a flight risk. Although Jasmine testified she "know[s] for sure [Davila] will appear to court," she admitted she is unaware of the full extent of Davila's prior criminal history and of his prior failures to appear. Therefore, this factor also weighs against a determination that Davila's bonds are excessive.

Keeping in mind that it is Davila's burden to demonstrate his bonds are excessive, we conclude the trial court had sufficient evidence before it to find the nature and circumstances of the offenses charged, the length of the potential sentences, Davila's prior criminal record and history of non-compliance with bond conditions and of failing to appear, the future safety of the community, and the lack of reasonable assurances of appearance collectively outweigh the evidence supporting a reduction in bond. Because the balance of relevant factors supports the bond amounts, we conclude the trial court did not abuse its discretion in denying the applications for writs of habeas corpus. We, therefore, overrule Davila's sole issue on appeal.

## Conclusion

Having overruled Davila's sole issue on appeal, we affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH